S. Frank Harrell – SBN 133437
sharrell@lynberg.com
Debra Cahir – SBN 144987
dcahir@lynberg.com
Kyle A. Schiffman – SBN 337513
kschiffman@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W, Town & Country Road, Suite 1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendants CITY OF FONTANA, DAVID JANUSZ, JEREMY HALE, ROBERT MILLER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS ANTHONY PEREZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF FONTANA, DAVID JANUSZ, JEREMY HALE, RONALD KOVAL, ROBERT MILLER, JOANNA PINA, and DOES 1 through 10. INCLUSIVE,<br><br>Defendants. | Case No. 5:19-cv-01623-DMG (KK)<br><br>*Assigned for All Purposes to:*<br>*Hon. Dolly M. Gee – Courtroom 8C*<br><br>**DEFENDANTS CITY OF FONTANA, DAVID JANUSZ, JEREMY HALE, ROBERT MILLER'S, MEMORANDUM OF CONTENTIONS OF LAW AND FACT**<br><br>Courtroom: 8C<br><br>*Complaint Filed: August 23, 2019*<br>*Trial Date:     March 5, 2024* |

**PLEASE TAKE NOTICE** that pursuant to Local Rule 16-4, Defendants CITY OF FONTANA, DAVID JANUSZ, JEREMY HALE, and ROBERT MILLER, (collectively "Defendants") hereby submit the following Memorandum of Contentions of Fact and Law.

## I. CLAIMS AND DEFENSES (L.R. 16.-4.1)

### A. CLAIMS

#### Summary of Claims

After multiple Fed. R. Civ. P. 12 Motions and a Motion for Summary Judgment (with many positive rulings for the Defendants), Plaintiff's sole remaining claims are as follows:

1. Plaintiff Thomas Anthony Perez's Fourth Claim for Relief for "Violation of Substantive Due Process [] Under the Fourteenth Amendment" pursuant to 42 U.S.C. § 1983" against Defendants David Janusz, and Jeremy Hale;

2. Plaintiff Thomas Anthony Perez's Seventh Claim for Relief for "Violation of the Bane Act – Civ. Code § 52.1" against Defendants David Janusz and Jeremy Hale, and Robert Miller;

3. Plaintiff Thomas Anthony Perez's Eighth Claim for Relief for "False Arrest/False Imprisonment Under California State Law" against Defendants Jeremy Hale and Robert Miller;

4. Plaintiff Thomas Anthony Perez's Tenth Claim for Relief for "Intentional Infliction of Emotional Distress Under California State Law" against Defendants David Janusz, and Jeremy Hale.

(Order on Motion for Summary Judgment, Dkt. # 94, 28:11-18).

Former Defendants Ronald Koval and Joanna Pina have been completely dismissed from this case. (Id.). The City of Fontana is also not a viable Defendant in this matter. The Court dismissed Plaintiff's federal claims against the City over two years ago. (Order on Motion to Dismiss, Dkt. # 39, pp. 3-4). Plaintiff's remaining

state court claims are based solely on respondeat superior. <u>See</u>, <u>Scott v. County of Los Angeles</u>, 27 Cal. App. 4th 125, 139-40 (1994) ("Under <u>Government Code</u> § 815.2, subdivision (a), [a City or] County is liable for acts and omissions of its employees under the doctrine of respondeat superior to the same extent as a private employer.")  Because the City stipulates to conduct within the course and scope of employment by its Officer Defendants, the issue is not appropriately submitted to a jury. Indeed, Plaintiff's only discernable purpose for raising the issue at trial at all is to suggest the presence of insurance / a deep pocket. Needless to say, nothing like this is allowed at federal trials. <u>See</u>, <u>Larez v. Holcomb</u>, 16 F.3d 1513, 1518-1519 (1994)("…if we allow juries in § 1983 actions to be told that the government will indemnify the defendant, we presumably should also allow the defendant to explain that any award paid by the government will come out of the people's taxes.  Instead of focusing the jury's attention on the injury actually suffered by the plaintiff, we would be subjecting the jury to a flurry of largely irrelevant assertions and counter-assertions concerning who may or may not be financially harmed by a particular award.")

### **Analysis of Remaining Claims Against Officers**

**(a)    Claim 1**

"Violation of Substantive Due Process [] Under the Fourteenth Amendment" pursuant to 42 U.S.C. § 1983" against Defendants David Janusz and Jeremy Hale

**(b)    Elements Required**

In order to recover under the due process clause for Defendants' questioning of Plaintiff, he must prove officer conduct which shocks the conscience. <u>See</u>, <u>Porter v. Osborn</u>, 546 F.3d 1131, 1137 (9th Cir. 2008)("[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation.")(quoting <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998)). Perez cannot meet this burden here. A short recitation of the key facts makes Defendants' point.

On August 8, 2018, convicted criminal Plaintiff Thomas Perez advised the Fontana Police Department that his father, an elderly man with signs of dementia, had been missing since the prior evening. Fontana Officers responded to the scene only to find Perez acting suspiciously – which included a visible lack of concern over his father's wellbeing. Upon further investigation of Plaintiff, his residence and his neighbors, Officers observed a wealth of evidence all leading them to reasonably believe that a crime had occurred involving Perez -- and that Plaintiff's residence was an active crime scene.

For starters, neighbors told officers that Perez and his father had a volcanic relationship, featuring loud screaming matches on their front lawn. Moreover, the interior of Plaintiff's home looked as though a recent physical struggle had taken place. So much was chaotic, oddly situated and strewn about that much of the home was unlivable. Perez sheepishly claimed the eyebrow-raising chaos was the result of "renovations" – but officers[1] are not constitutionally required to swallow whatever a suspect says as true. See, United States v. Arvizu, 534 U.S. 266, 277 (2002)(in making a probable cause/reasonable suspicion determination, courts must examine the "totality of the circumstances", meaning that probable cause may exist even if "each of the[] factors alone is susceptible of innocent explanation."); United States v. Rodriguez, 869 F.2d 479, 483 (9th Cir. 1989)("It is not uncommon for seemingly innocent conduct to provide the basis for probable cause."); see also, Borgman v. Kedley, 646 F.3d 518, 524 (8th Cir. 2011) ("[An officer] need not rely on an explanation given by the suspect"); Cox v. Hainey, 391 F.3d 25, 32, n. 2 (1st Cir 2004) ("A reasonable police officer is not required to credit a suspect's story"); Marx v. Gumbinner, 905 F.2d 1503, 1507, n. 6 (11th Cir. 1990) ("[Officers a]re not required to forego arresting [a suspect] based on initially discovered facts showing probable cause simply because [the suspect] offered a different explanation"); Criss v. Kent, 867 F.2d 259, 263 (6th Cir. 1988) ("A policeman ... is under no obligation to

---

[1] And civilians.

**4**
**DEFENDANTS MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

give any credence to a suspect's story ...").

In response, Plaintiff agreed to speak with the Officers at FPD – leaving the potential crime scene secure while Officers obtained a search warrant for Plaintiff's home. Thereafter, suspicious facts continued to pile up against Plaintiff. Perez's father's cell phone and wallet were found in the couple's home (suggesting that he was no longer alive or otherwise had any use for them). More ominously, human blood was found in multiple places in Plaintiff's home. Some of it was visible to the naked eye. Other blood was detected by use of special law enforcement lighting which reveals human blood – even when strenuous efforts have been made to clean and conceal it (which was the apparent case here). Even more ominously, a highly trained FPD cadaver dog alerted to the recent presence of a human corpse on a portion of the floor in Plaintiff's home.

The parties have completely different versions of what happened during Perez's police interview at the Fontana station house. Perez claims that he is an emotionally strong man and that he consequently forcefully (and repeatedly) denied killing his father. As Perez tells it, trained police officers should have been able to detect his sincerity and swiftly terminate his interview, allow Plaintiff to go back to his residence and do whatever he wanted with potential murder scene evidence. But the trial of this matter will reveal this claim to be a money-motivated falsehood. Nowhere in Plaintiff's recorded interviews does he forcefully deny anything. To all appearances, he acts like a legitimate murder suspect.

The same goes for Plaintiff's one-time claim that he never admitted to murdering his father during his discussions with FPD. Perez _**did**_ admit to murder – a fact that he finally conceded once he reviewed the pertinent FPD incident video. Here too, Plaintiff has no good answer for why the FPD should release an admitted murderer to wander loose in the streets.

Plaintiff plainly lives a life filled with unexplainably bad decisions. This includes his bizarre "admission" to murder in this case. Indeed, the next day,

5
DEFENDANTS MEMORANDUM OF CONTENTIONS OF LAW AND FACT

Plaintiff's father was found alive and well and the FPD's investigation concluded. So the question arises -- who admits to murdering their father when a murder never happened? As will be revealed at trial, Perez is a startlingly odd human being who is undeserving of winning anything in this litigation.

This issue in this case is whether Perez can prove a violation of his federal constitutional rights. See, Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution. . ..") Here, Plaintiff contends that his questioning by Fontana officers "shocked the conscious".  See, Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008)("[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation.")(quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

But what exactly is conscious shocking about Defendants' interest in solving a murder through sometimes vigorous, confrontational questions – particularly given that suspects often lie and they otherwise often ***need*** confrontation to test the truth of their assertions. This is particularly so when the crime is murder – and the public has a critically important interest in getting the truth. Plaintiff would seemingly have law enforcement respond to the presence of a corpse in his home (and blood spatters in multiple locations) with conversation more appropriate for afternoon tea. But this is not how law enforcement can, or does, effectively function. The defense has faith that a fair-minded jury will agree.

The cornerstone of Plaintiff's "due process questioning" claim seems to be that Officers told Plaintiff his father was dead during his questioning – a misrepresentation commonly referred to as a "ruse" in law enforcement parlance. Ruses of this type have, of course, been repeatedly proven to get answers that solve crimes. And, importantly here, Courts have ***endorsed*** ruses as being ***fully constitutional*** – and not "conscious shocking" to our legal system. See e.g., U.S. v. Michaud, 268 F.3d 728 (9th Cir. 2001)("We have held that there is no constitutional mandate forbidding the use of deception in executing a valid arrest

**6**
**DEFENDANTS MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

1 warrant.)(citations omitted); <u>United States v. Contreras–Ceballos</u>, 999 F.2d 432, 435 (9th Cir.1993) (holding that an officer was justified in falsely claiming to be a Federal Express agent when executing a warrant); <u>U.S. v. Preston</u>, 751 F.3d 1008, 1026 (9th Cir. 2014)("Assuredly, interrogating officers can make false representations concerning the crime or the investigation during questioning without always rendering an ensuing confession coerced…[citation] . . . the Supreme Court has observed that the test of voluntariness is whether the confession was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence.")(citing) <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976)); <u>Frazier v. Cupp</u>, 394 U.S. 731, 739 (1969) (police misrepresentations as to co-suspect's admissions not sufficient under totality of circumstances to conclude confession was involuntary); <u>Miller v. Fenton</u>, 796 F.2d 598 (3d Cir.) (lie about time of victim's death not "sufficient trickery" to overcome defendant's will), <u>cert. denied</u>, 479 U.S. 989, 107 (1986)); <u>accord</u> <u>Mastin v. Senkowski</u>, 297 F.Supp.2d 558, 603 (W.D.N.Y.2003)(deception of suspects permissible in crime solving); <u>Ortiz v. Uribe</u>, 671 F.3d 863, 869 (9th Cir. 2011)(police officer's deceptive interview tactic as polygrapher did not violate due process).

### (c) Key Evidence in Opposition

1. Plaintiff's interview tapes.
2. Photographs of incriminating evidence in Plaintiff's home.
3. Officer testimony and evidence located during the search of Plaintiff's home.
4. Plaintiff's deposition.

/ / / /
/ / / /

### (d) Qualified Immunity

The Court has ruled triable issues of material fact preclude entry of summary judgment on all of Plaintiff's claims under the qualified immunity doctrine. (Order on Motion for Summary Judgment, Dkt. # 94, 28:11-18). The next procedural step on qualified immunity therefore is submission of special interrogatories to the jury. See, DelPriore v. McClure, 424 F. Supp. 3d 580, 598 (D. Alaska 2020)("The disputed facts must be resolved by the jury through the use of special interrogatories, which will determine whether the officers' actions constituted excessive force in violation of the Fourth Amendment and whether the officers are entitled to qualified immunity as a matter of law."); Burnett v. Bottoms, 368 F.Supp.2d 1033, 1042, 1043 (D. Ariz. 2005) ("How these facts are resolved by the jury through the use of special interrogatories will determine whether the officers' actions constituted excessive force in violation of the Fourth Amendment and whether the officers are entitled to qualified immunity as a matter of law .... If the officers engaged in the conduct that Plaintiff alleges and if Plaintiff never resisted arrest or struggled and presented no threat to officer safety or the safety of others, a trier of fact could find that the officers used excessive force during the course of her arrest in violation of the Fourth Amendment. Additionally, if Plaintiff cooperated after she was handcuffed and officers still physically picked her up and carried her, dropped her face down to the ground, and placed her in excessively tight handcuffs which caused her wrists to bleed and refused to loosen them upon fair notice the handcuffs were too tight or were on for an unreasonable period of time, the officers would not be entitled to qualified immunity."); Sanchez v. Jiles, 2013 WL 12242221, at *2 (C.D. Cal. 2013)("As part of its deliberations, the court asked the jury to answer special interrogatories that could assist in resolving Jiles' qualified

immunity defense.")[2]

Once the salient facts are resolved by the jury to assist the Court, the defense is confident that Plaintiff will be unable to cite any case that "clearly established" law barring the Fontana officers from acting as they did. See, District of Columbia v. Wesby, 138 S.Ct. 577, 590 (2018)("The 'clearly established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the *particular circumstances* before him.")(emphasis added.); Saucier v. Katz, 533 U.S. 194, 202 (2001)(the rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."); id. at 209 (a Section 1983 plaintiff must point to case law that states "a clearly

---

[2] See also, Cowan ex rel Estate of Cooper v. Breen, 352 F.3d 756, 764, 765 (2d Cir. 2003) ("As the case proceeds to trial, it should be noted that although the factual disputes in the instant case that must be resolved by the jury go both to the excessive force and to the qualified immunity questions, the qualified immunity issue is 'a question of law better left for the court to decide,' ... Thus, if the jury finds that Breen used excessive force against Cooper, the court should then decide whether Breen is entitled to qualified immunity. Because this determination relies on the resolution of questions of fact, we recommend, as we did in Stephenson, that interrogatories on the key factual disputes be presented to the jury."); Warren v. Dwyer, 906 F.2d 70 (2d Cir. 1990) ("if there are unresolved factual issues which prevent an early disposition of qualified immunity defense, jury should decide these issues on special interrogatories ... ultimate legal determination whether, on facts found, a reasonable officer should have known he acted unlawfully, is question of law for court to decide"); Blake v. City of New York, 2007 WL 1975570, at *5 (S.D.N.Y. 2007) ("The Second Circuit disfavors sending the qualified immunity issue to the jury because it is a complex, purely legal question that is likely to cause confusion .... In accordance with the procedures outlined in [precedent], the Court will charge the jury on excessive force but not qualified immunity. The Court will submit special interrogatories to the jury on the central factual issues in this case. If the jury determines that the officers used excessive force, and if Defendants then renew their motion for qualified immunity, the Court will determine as a matter of law whether qualified immunity attaches based on the answers to the special interrogatories.");

established rule prohibiting the [public employee] from acting as he did ... [i]n the ***circumstances presented*** to the [employee].")(emphasis added); see also, Johnson v. County of Los Angeles, 340 F.3d 787, 791 (9th Cir 2003)(It is for "courts, not juries to settle the ultimate questions of qualified immunity."); Nunez v. Davis, 169 F.3d 1222, 1229 (9th Cir. 2000)("Whether a public official is entitled to qualified immunity is a question of law."). In the absence of such authority, a defendant officer is "entitled to qualified immunity, and the suit should [be] dismissed . . .." Saucier v. Katz, 533 U.S. 194, 209 (2001); see, De la Cruz v. Kauai County, 279 F.3d 1064, 1069 (9th Cir. 2002) (Where a Section 1983 plaintiff fails to "cit[e] any case" barring the officer's conduct, qualified immunity required because "[i]t would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")(citations omitted).

### (e) Evidentiary Issues

Plaintiff's life before and after this incident has been marked by repeated criminal acts, arrests and convictions – which include ***pending felony charges*** in Orange County Superior Court. Concurrently, Perez seeks enormous damages in this case for "emotional distress" – which he supports by claiming the subject incident is the source of all his putative ongoing mental anguish.

But in order to prove damages for "emotional distress", a plaintiff must show a causal connection between a defendant's conduct and the claimed "distress". See, Halvorsen v. Baird, 146 F.3d 680, 686-687 (9th Cir. 1998); Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986); Dickson v. Burke County, 303 F.3d 1271, 1975 (11th Cir. 2002). And once "emotional distress" damages are alleged, the plaintiff has placed his emotional condition in issue – thereby making evidence of other potentially stressful events relevant to whether some (or all) of the claimed "emotional distress" is actually traceable to other sources. See, York v. AT&T, 95 F.3d 948, 957-958 (10th Cir. 1996)("Because York chose to raise a claim of

emotional distress, it was entirely appropriate for the court to allow the defendants to introduce evidence of alternate or multiple causes of such distress. The jury must be permitted to consider such relevant evidence of causation where damages are claimed for emotional distress. Moreover, it would be inequitable to allow the plaintiff to introduce selected evidence on the matter but to disallow the defendants to present evidence supporting their theories of causation."); Fritsch v. City of Chula Vista, 196 F.R.D. 562, 569 (S.D. Cal. 1999)("[Plaintiff] elected to seek monetary relief from the defendants to compensate her for 'emotional pain, suffering, loss of self esteem, and mental anguish'; consequently, [plaintiff] is relying on her emotional state to make her case ... But to insure a fair trial, particularly on the element of causation, the court concludes that defendants should have access to evidence that [plaintiff's] emotional state was caused by something else. Defendants must be free to test the truth of [plaintiff's] contention that she is emotionally upset because of the defendants' conduct. Once [plaintiff] has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to the element of her claim."); Rettiger v. IBP, Inc., 1999 WL 318153, *2 (D. Kan. 1999) ("The case law recognizes that a plaintiff claiming emotional distress opens the door to evidence of other probable causes of her distress.")(citations omitted); Morris v. Long, 2012 WL 1498889, at *4 (E.D. Cal. 2012) (denying motion in limine to exclude evidence of Plaintiff's mental health hospitalization and mental health unrelated to the incident as potential alternate sources for plaintiff's claimed emotional distress); see also, Vinson v. Superior Court, 43 Cal. 3d 833, 839-840 (1987)("In the case at bar, plaintiff haled defendants into court and accused them of causing her various mental and emotional ailments. Defendants deny her charges. As a result, the existence and extent of her mental injuries is indubitably in dispute. In addition, by asserting a causal link between her mental distress and defendants' conduct, plaintiff implicitly claims it was not caused by [another] mental condition, thereby raising the question of alternative sources for the distress. We thus conclude

that her mental state is in controversy.")

Given basic principles of trial fairness, the rule is not subject to exception or limitation. Indeed, "[t]he case law is clear that once a plaintiff makes claims of emotional distress, the defendant is allowed to explore ***any*** alternative or contributing causes to that emotional distress." Kakeh v. United Planning Org., 587 F.Supp.2d 125, 128-129 (D.D.C. 2008)(emphasis added); see, id., ("In short, a plaintiff seeking damages for emotional distress essentially 'opens the door' to intense scrutiny of his psychological status and history.")(citations omitted). This includes potentially stress-inducing events which ***precede and post-date the incident*** of which an "emotional distress" plaintiff complains. See, e.g., Halvorsen v. Baird, 146 F.3d 680 (9th Cir. 1998)(in "a personal injury case, . . .evidence that pain and suffering was entirely attributable to one injury may be challenged by evidence that the plaintiff suffered injuries . . . both ***before and after*** the one at issue, to which part or all the pain and suffering could be attributed.")(emphasis added); Raymond v. Ameritech Corp., 2004 WL 1381134 (N.D. Ill. 2004)(in employment discrimination suit, evidence of gambling debts incurred by plaintiff and her husband for three years prior and one year after layoff was relevant to whether the gambling caused or exacerbated plaintiff's claimed "emotional distress"); Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986)(pre-incident drug use and post-incident "drug withdrawal" admitted as alternative stressors in "emotional distress" case); see also, Barnhart v. Capper, 130 P.3d 148 (Kan. Ct. App. 2006)(finding the trial court properly admitted evidence of plaintiff's "drug seeking" behavior, including abuse of illegal drugs and attempts to have doctors prescribe painkillers, before and after she was hit by a car, as relevant to the proper assessment of pain and suffering damages relating to the accident); Limatta v. Vest, 45 P.3d 310 (Alaska 2002) (evidence of bicyclist's "drug seeking" behavior before and after he was hit by a car should have been admitted in order to properly assess damages for medical expenses and pain and suffering stemming from the

accident); Ocasio v. Amtrak, 299 N.J. Super. 139, 157-58 (App. Div. 1997) (evidence of plaintiff's long-term drug and alcohol abuse prior to his being struck by defendant's train should have been admitted at trial to allow the jury to properly assess emotional distress – type damages); Krause v. Taylor, 710 A.2d 1142 (Pa. Super. Ct. 1998) (evidence of plaintiff's past drug and alcohol abuse should have been admitted in a car accident case so that these potential alternative stressors could be excluded from damages).

Arrests and criminal convictions have also been repeatedly recognized as a potential alternative source for claimed "emotional distress" at trial. See, e.g., Udemba v. Nicoli, 237 F.3d 8, 15 (1st Cir. 2001) (plaintiff's arrest in another incident admissible: "[T]he [arrest] evidence was specially relevant to a contested issue in the case, namely, the extent of damages attributable to emotional distress."); Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986) (evidence of plaintiff's "prior arrest" admitted on finding that "the jury…would be aided by this evidence in measuring fairly the extent of damages."); see also, Conan v. City of Fontana, 2017 WL 8941499, at *7 (C.D. Cal. 2017) ("a substantial amount of evidence of Plaintiff Randy Conan's criminal history and drug use will be relevant to Plaintiffs' claims for emotional damages… For example, Defendants argue Plaintiff has an extensive history of methamphetamine addiction; attempted suicide in 2010 while using methamphetamine resulting in a two week detention at Arrowhead Regional Medical Center; was arrested and jailed for possession of methamphetamine in 2001; and has been arrested and jailed several times between 2001 and 2007 for driving under the influence… Defendants argue Plaintiffs' drug use and criminal convictions are alternative sources of stress that caused Plaintiff Randy Conan's emotional distress… rather than the incident with defendant Patty on August 30, 2015. ***The Court agrees*** such evidence will be relevant to the issue of emotional damages…") (emphasis added); Krause v. Taylor, 710 A.2d 1142 (Pa. Super. Ct. 1998) (evidence of plaintiff's past drug and alcohol problems should have

been admitted in a car accident case so that these stressors could be excluded from damages.)

Against this backdrop, Holloway's ambitiously valued request for "emotional distress" damages in this case has consequences. See, Tobias v. City of Los Angeles, 2018 WL 9669923, at *9 (C.D. Cal. 2018)("If Plaintiff claims he suffered from emotional distress [as a result of the subject incident], . . .Defendants may present evidence. . . that there are alternate sources of stress that caused this damage."); Rettiger v. IBP, Inc., 1999 WL 318153, *2 (D. Kan. 1999) ("The case law recognizes that a plaintiff claiming emotional distress opens the door to evidence of other probable causes of her distress.")(citations omitted).

Given the state of the law, Perez can either drop his "emotional distress" claim – or answer trial questions that will aid the jury's evaluation of the true source of his "emotional distress", if any. The choice is for Perez to make -- and for reasons which remain a mystery, Plaintiff has yet to make it.

### (a) Claim 2

"Violation of the Bane Act – Civ. Code § 52.1" against Defendants David Janusz, Jeremy Hale and Robert Miller

### (b) Elements Required for Claim

As an initial matter, where "Plaintiff's §52.1 claim is solely predicated on underlying constitutional claims that have failed as a matter of law their Bane Act Claim also fails as a matter of law." Cervantes v. San Diego Police Chief Shelley Zimmerman, 2020 WL 5759752, at *1 (S.D.Cal. 2020). Thus, if the Court dismisses Plaintiff's constitutional claims it must also dismiss Plaintiff's §52.1 claim.

Independent of constitutional issues, Plaintiff's §52.1 claim also fails because Plaintiff cannot establish that Defendants intentionally interfered or attempted to interfere with Plaintiff's rights through the use of "threats, intimidation or coercion". Cal. Civil Code, §52.1.   See, e.g., Reese v. Cty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (recognizing a Bane Act claim under Civil Code §52.1 must

include allegations of "specific intent" that the defendants "intended not only the force, but [also] its unreasonableness.").

**(c)** **Key Evidence in Opposition**

See, Claim 1 above.

**(d)** **Evidentiary Issues**

See, Claim 1 above.

**(a)** **Claim 3**

"False Arrest/False Imprisonment Under California State Law" against Defendants Jeremy Hale and Robert Miller;

**(b)** **Elements Required**

"Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is "but one way of committing a false imprisonment." Watts v. County of Sacramento, 256 F.3d 886, 891 (9th Cir.2001). The tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short. City of Newport Beach v. Sasse, 9 Cal.App.3d 803, 810 (1970); Asgari v. City of Los Angeles, 15 Cal.4th 744, 757 (1997) ("The tort of false imprisonment is defined as the unlawful violation of the personal liberty of another. The confinement must be 'without lawful privilege.'") However, if an arrest is "lawful," there is no civil liability as a matter of law. See e.g., Salazar v. Upland Police Dept., 116 Cal.App.4th 934, 947 (2004) ( Pen.Code, § 836); Lopez v. City of Oxnard, 207 Cal.App.3d 1, 7-9 (1989) (Pen.Code, § 847).)

An arrest is lawful if supported either by probable cause – or by an officer's "reasonable cause" to believe s/he had probable cause. Penal Code § 847(b). Thus, the law does not require law enforcement to display perfection with sometimes difficult probable cause concepts in order to avoid civil liability. Id.

Probable cause to arrest exists if the facts known to the arresting officer

**15**
**DEFENDANTS MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

would lead a person of ordinary care and prudence to entertain "an honest and strong suspicion that an individual is guilty of a crime." People v. Kraft, 23 Cal.4th 978, 1037 (2000), cert. denied, 532 U.S. 908 (2001). Probable cause is not vitiated because there may be "some room for doubt." People v. Mower, 28 Cal.4th 457, 473 (2002). Probable cause requires "***only the probability***, and not a prima facie showing, of criminal activity." Franklin v. Fox, 312 F.3d 423, 438 (9th Cir. 2002)(emphasis added), quoting Illinois v. Gates, 462 U.S. 213, 235 (1983).[3] "Requiring more would unduly hamper law enforcement." Beck v. Ohio, 379 U.S. 89, 91 (1964); Mazza v. City of New York, 1999 WL 1289623 at *5 (E.D.N.Y. 1999) (finding that officer need not have investigated every possible issue raised before concluding that he had probable cause to arrest, as a "police officer is neither a prosecutor nor a trier of fact.").

      Plaintiff has no viable false arrest claim based on the factual record here. Perez was never handcuffed and placed into an involuntary medical hold until after ***his confession*** to murder. Requisite probable cause plainly existed to arrest him at that point. Stated otherwise, admitted killers have no right to be ignored by the criminal justice system. See, Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) ('To prevail on his Section 1983 claim for false arrest or false imprisonment, [plaintiff] would have to demonstrate that there was no probable cause to arrest him.").

      For his part, Plaintiff claims that he was actually "arrested" earlier – but he has ***never*** said how much earlier. Perez's ongoing silence on this key issue frankly makes it impossible for defense counsel to do their job. See, Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1171 (1st Cir. 1995) (courts must protect a civil "defendant's inalienable right to know in advance the nature of the cause of action

---

[3] State and federal probable cause standards are identical. See, Briley v. City of Hermosa Beach, 2008 WL 4443894, at *5 (C.D.Cal. 2008)("The [probable cause] standard is the same under California state law.")

**16**
**DEFENDANTS MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

being asserted against him."). The mysterious nature of Plaintiff's claim also threatens to plunge this trial into unfair confusion and waste of time. The Court should consequently use its trial management authority to direct Plaintiff's counsel to state at what point he contends Perez was illegally arrested. See, Gordon v. Cnty. of Orange, 6 F.4th 961, 969 (9th Cir. 2021)(dispensation of justice requires courts to determine "what is really being litigated"). Only then can the parties focus their presentation on what really matters in this case – which will ultimately be to the benefit of the parties, the jury and this Court's already congested calendar.

**(c) Key Evidence in Opposition**

See, Claim 1 above.

**(d) Evidentiary Issues**

See, Claim 1 above.

**(a) Claim 4**

"Intentional Infliction of Emotional Distress Under California State Law" against Defendants David Janusz and Jeremy Hale.

**(b) Elements Required**

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove: (1) extreme and outrageous conduct by the defendant who has the intention of causing emotional distress; (2) severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's conduct. Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001(1993). For conduct to be deemed outrageous, it must be so "extreme as to exceed all bounds of that usually tolerated in a civilized community." Id.

For the reasons Plaintiff suffered no substantive due process violation, Plaintiff cannot show that Defendants' conduct was so extreme or outrageous as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and

**17**
**DEFENDANTS MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

utterly intolerable in a civilized community." Restatement (Second) of Torts § 46(1) (1965). The many suspicious and still unexplained circumstances surrounding Plaintiff's father's disappearance put the blame for what happened in this case squarely on Plaintiff. And the defense intends to show just that at trial.

### (c) Key Evidence in Opposition

See, Claim 1 above.

### (d) Evidentiary Issues

See, Claim 1 above.

## B. MOTIONS IN LIMINE

1. Motion in Limine No. 1 Excluding Policies and Training as Standard of Care
2. Motion in Limine No. 2 Excluding Officers' Personnel Files and Prior Bad Acts
3. Motion in Limine No. 3 Excluding City Indemnity Information
4. Motion in Limine No. 4 Exclude Subsequent Investigation or "Cover up" accusations
5. Motion in Limine No. 5 Exclude Plaintiff's Experts from Testifying

## II. BIFURCATION OF ISSUES (L.R. 16-4.3)

### PUNITIVE DAMAGES

It would unfairly prejudice Defendants if Plaintiff was permitted to litigate their financial condition during the trial on the issue of liability and compensatory damages. Recognizing the prejudice to the Defendant, one court has stated that:

> The preferred method of accommodating the various interests is to delay trial as to the amount of award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendants' conduct warrants any award of punitive damages at all. If the jury finds in favor of

the claimant on all of these issues, the parties should then be allowed to present evidence with respect to the amount of the punitive damage award.

Smith v. Lightening Bolt Production, Inc., 861 F.2d 363, 374 (2nd Cir. 1988).

In short, evidence of Defendants' net worth should be precluded until and unless the jury finds that punitive damages should be assessed against them. Consequently, any questioning of Defendants regarding their personal assets, finances or overall financial condition should be conducted only after the jury determines that punitive damages are warranted. See, Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) ("It has been widely held . . . that the financial standing of the defendant is inadmissible as evidence in determining the amount of compensatory damages to be awarded."); see also, Marvin Johnson, P.C. v. Shoen, 888 F.Supp. 1009, 1013 (D. Ariz. 1995) ("The financial standing of a defendant is ordinarily inadmissible as evidence in determining the amount of compensatory damages to be awarded").

### III. JURY TRIAL (L.R. 16-4.4)

A jury trial has been timely requested by Plaintiffs and Defendants.

### IV. ATTORNEYS' FEES (L.R. 16-4.5)

Attorneys' fees are requested by Defendants pursuant to 42 U.S.C. § 1988.

Dated: January 16, 2024

Respectfully submitted,

DATED: January 16, 2024     **LYNBERG & WATKINS**

By: */s/ S. Frank Harrell*
**S. FRANK HARRELL**
**DEBRA CAHIR**
**GARROS CHAN**
Attorneys for Defendants CITY OF FONTANA, DAVID JANUSZ, JEREMY HALE, ROBERT MILLER

**19**
DEFENDANTS MEMORANDUM OF CONTENTIONS OF LAW AND FACT